☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No. 22-1815M(NJ) |
| Information about the location of the cellular telephone | )      Matter No. 2022R00013 |
| assigned call number (213) 725-3753, whose service provider | ) |
| is T-Mobile US, Inc., as further described in Attachment A. | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

       An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.
This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A).

       I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

       **YOU ARE COMMANDED** to execute this warrant on or before 11/24/2022 _____ *(not to exceed 14 days)*
    ☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

       Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

       The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Nancy Joseph    .
                                                      *(United States Magistrate Judge)*

    ☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☑ for 30 days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 11/10/2022 @ _____
3:37 p.m.

                                              *Judge's signature*

City and state:   Milwaukee, Wisconsin            Honorable Nancy Joseph, U.S. Magistrate Judge
                                                             *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**Matter No. 2022R00013**

**Property to Be Searched**

1.      Records and information associated with the cellular device assigned call number **(213) 725-3753** (referred to herein and in Attachment B as "**Target Cell Phone**"), with listed subscriber unknown, that is in the custody or control of Verizon Wireless, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2.      The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.      The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period September 1, 2021, to the present:

   i.      Names (including subscriber names, user names, and screen names);

   ii.      Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.      Local and long distance telephone connection records;

   iv.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.      Length of service (including start date) and types of service utilized;

   vi.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period September 1, 2021, to the present including:

a. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

b. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b. Information associated with each communication to and from the Target Cell Phone for a period of **30** days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT,

True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, involving Julio BARRAZA.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts

under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information about the location of the cellular telephone<br>assigned call number (213) 725-3753, whose service provider<br>is T-Mobile US, Inc., as further described in Attachment A. | )<br>)<br>)<br>)<br>)<br>) |

Case No. 22-1815M(NJ)

Matter No. 2022R00013

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A), and 2711(3)(A).

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Possession with intent to distribute, distribution, and conspiracy to possess with intent to distribute a controlled substance. |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DEA TFO Joseph Scheuring
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 11/10/2022

_____
*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Joseph Scheuring, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for the information about the location of the cellular telephone assigned call number **(213) 725-3753** ("**Target Cell Phone**"), whose service provider is Verizon Wireless ("Verizon" or "Service Provider"), a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.   *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.     I am a federally deputized Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I am currently assigned to the High Intensity Drug Trafficking Area (HIDTA) and have been since August 2020. I am also currently a

1

Milwaukee Police Officer with the Milwaukee Police Department (MPD) and have been since October of 2007.

4.     I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5.     As part of my duties as a DEA TFO, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the federal controlled substance laws, including, but not limited to Title 21, United States Code, Sections 841, 843, 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 924(a), and 924(c). In the course of my experience, I have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, thefts, counterfeit crimes, including cellular telephones and other electronic telecommunication devices.

6.     As a DEA TFO and MPD police officer, I have participated in the investigation of narcotics-related offenses, resulting in the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity.  As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances.  Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the narcotics traffickers and abusers of controlled substances.  I have participated in all aspects of drug

2

investigations, including physical surveillance, execution of search warrants, undercover operations, court-ordered wiretaps, analysis of phone records, and the arrests of numerous drug traffickers. I have also been the affiant of search warrants. Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

7.      In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of cellular devices used to commit those offenses as well as the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their locations.

8.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3

9. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

10. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (distribution of and possession with the intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with the intent to distribute controlled substances) have been committed, are being committed, and/or will be committed by Julio BARRAZA (DOB: XX/XX/1974). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

11. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

12. In January 2022, law enforcement officers in Milwaukee, Wisconsin, initiated an investigation into individuals distributing large quantities of methamphetamine and marijuana throughout Milwaukee, Wisconsin, and elsewhere. Law enforcement officers identified the leader of the drug trafficking organization

4

(DTO) to be Phillip DANIELS SR. (DANIELS) (DOB: XX/XX/1976). The investigation has revealed that DANIELS obtains controlled substances from source(s) of supply in California. The controlled substances have been sent to Milwaukee, Wisconsin, and St. Paul, Minnesota, using the United Postal Service (UPS), FedEx, and/or United States Postal Service (USPS), or couriers drive the controlled substances from California to the Midwest United States at the direction and control of DANIELS. The DTO has established distribution locations in Milwaukee, Wisconsin, St. Paul/Minneapolis, and Chicago, Illinois/Northern Indiana. Through investigation, case agents learned that the DANIELS DTO distributes methamphetamine, heroin, fentanyl, cocaine, and marijuana.

13.     According to the investigation, DANIELS travels on a frequent basis. Airline records reflect that DANIELS took multiple flights, often with other DTO members, to California from 2020 through 2022. Based upon familiarity with this investigation, agents believe that the purpose of these travels was to obtain and arrange for the transportation of controlled substances. Since at least late 2020, DANIELS has frequently traveled to the area of St. Paul, Minnesota, and Chicago, Illinois, which are believed to be a DTO distribution locations.

14.     The investigation to date has revealed that BARRAZA works with COLULA to supply the DANIELS DTO with controlled substances, to include methamphetamine and cocaine. BARRAZA sends parcels suspected to contain controlled substances to various DTO-associated addresses. Further, during the course of the investigation, BARRAZA was identified as a sender of controlled substance-laden parcels sent to the DANIELS DTO via UPS surveillance camera footage.

5

15.     This knowledge is based on a variety of investigative techniques, including but not limited to physical and electronic surveillance, pen register and trap and trace records, interceptions of DTO parcels, interviews with confidential sources, and court-authorized Title III interceptions, as set forth below.

**Confidential Source Information – CS 1**

16.     In early 2021, DEA and the Bureau of Criminal Apprehension in Minneapolis/St. Paul, Minnesota, were conducting a drug trafficking investigation in which approximately five pounds of methamphetamine, paraphernalia consistent with kilogram level distribution, and U.S. currency were seized from an individual later identified as CS 1.

17.     Beginning in November 2021, law enforcement conducted an interview of CS 1. CS 1 stated that CS 1 has known "Dr. Phil" since approximately September 2020. CS 1 identified DANIELS by photograph as "Dr. Phil." CS 1 stated that CS 1 sold multiple kilograms of cocaine, heroin, and methamphetamine for DANIELS and HENTON from approximately September 2020 to January 2021, in the St. Paul/Minneapolis area. According to CS 1, the narcotics were shipped to Minnesota, and a typical shipment would contain six kilograms of cocaine, six kilograms of heroin, and approximately thirty pounds of methamphetamine.

18.     CS 1 indicated that DANIELS traveled via a commercial airline multiple times a month to see if people were ready for more controlled substances, i.e., resupply and/or collect money from his various runners who assisted the DTO. CS 1 stated that DANIELS took these flights with U.S. currency inside of his luggage. CS 1 stated that

DANIELS also set up numerous LLCs, which DANIELS uses to get loans to move money. CS 1 indicated that DANIELS directed CS 1 to sell the narcotics, and DANIELS picked up the money at a later date. CS 1 indicated that if DANIELS did not pick up the money, CS 1 deposited drug proceeds into a Chase bank account under one of DANIELS' LLCs associated with a health care business, possibly "First Responsive Supportive Care." CS 1 provided a phone number for DANIELS in which CS 1 would call when more product was needed or if the money was ready for pick up. Officers were able to verify the phone number CS 1 provided was an old number used by DANIELS.

19.     CS 1 stated that in July of 2020, DANIELS and others flew to California where CS 1 met them. CS 1 drove them around and picked items up for them. CS 1 observed DANIELS and two other individuals open their luggage and remove multiple freezer sealed bags with U.S. currency. CS 1 observed one of the subjects leave and come back with a money counter. CS 1 indicated that after the money was counted, CS 1 drove DANIELS and the others to a different location and dropped them off. CS 1 later picked up DANIELS and the others that same day after a short period of time.

20.     CS 1 identified additional DTO subjects, to include Jameel BRADLEY SR., Leroy HENTON, and FRYER.

21.     CS 1 further stated that CS 1 delivered narcotics to FRYER's residence located at 234 E. Bates Avenue, St. Paul, Minnesota. According to CS 1, DANIELS instructed CS 1 to provide FRYER with pills and cocaine, which FRYER then distributed.

22.     Beginning in November 2021, CS 1, made statements against CS 1's penal interest. CS 1 has an armed robbery conviction, two firearm convictions, and one federal

narcotics trafficking conviction. CS 1 is cooperating in exchange for consideration on the federal narcotics trafficking conviction. Thus far, the information provided by CS 1 has been corroborated by information known to case agents, as well as other law enforcement officials, gathered during the course of the investigation. More specifically, CS 1's information has been corroborated by seizures of physical evidence, documentary evidence, and lawfully obtained device extractions. CS 1's information has also been corroborated by digital evidence contained on CS 1's cell phone, such as text messages, photographs, and geolocation information. Within the context of the information detailed and relied upon for purposes of this Affidavit, case agents believe CS 1 is credible and CS 1's information reliable.

### DTO Parcels

23. Between approximately October 7, 2021, through October 4, 2022, at least forty parcels suspected to contain controlled substances have been delivered to addresses associated with the DTO. These parcels have been identified as being associated with the DTO because the parcels have been traced to the same group of senders, and the listed recipients are often identified DTO members, to include DANIELS, Joelle MASSEY, Christopher DANIELS (now deceased), Michelle HAUCK, or a few select other names believed to be nominee names. The receiving addresses include, but are not limited to, the following:

      a.    8708 N. Deerwood Drive, Brown Deer, Wisconsin: a former residence shared by DANIELS and MASSEY.

      b.    234 Bates Avenue, Saint Paul, Minnesota: a former residence shared

by DANIELS and Ramona FRYER. DANIELS has been observed at this residence, and court authorized location information reflects that DANIELS was frequently in the area of this residence. FRYER is believed to be a Minnesota-based DTO distributor.

c. 9905 W. Fond Du Lac Avenue, Milwaukee, Wisconsin: the residence of D.B. and K.B. D.B. and K.B.'s Medicaid information has been used by a home health care company, A Touch of Love Supportive Care Agency (ATOL), operated by Roy HENTON.

d. 5234 N. Teutonia Avenue, Milwaukee, Wisconsin: a residence frequented by DANIELS.

e. 3259 N 48th Street, Milwaukee, Wisconsin: a vacant residence.

f. 6617 N 103rd Street, Milwaukee, Wisconsin: a vacant residence.

g. 10018 W. Fond Du Lac Avenue, Milwaukee, Wisconsin: a residence directly next to DANIELS' former residence (10016 W. Fond Du Lac Avenue). DANIELS has been observed obtaining from this address parcels suspected to contain controlled substances on two occasions.

**Title III Authorization**

24. In the court of this investigation, the United States District Court for the Eastern District of Wisconsin authorized the following interceptions pursuant to 18 U.S.C. § 2518:

a. On August 24, 2022, the Honorable Judge J.P. Stadtmueller issued an Order authorizing the initial interception of wire communications over phone number (262) 599-3332 (TARGET TELEPHONE 1), used by HENTON, and phone number (213)

9

444-9828 (TARGET TELEPHONE 2), used by DANIELS. Interceptions pursuant to this Order began on August 24, 2022, and ended on September 22, 2022.

b.     On September 30, 2022, the Honorable Pamela Pepper issued an Order authorizing the continued interception of wire communications over TARGET TELEPHONE 1, used by HENTON; the continued interception of wire communications and the initial interception of electronic communications over TARGET TELEPHONE 2, used by DANIELS, the initial interception of wire communications over phone number (773) 934-9062 (TARGET TELEPHONE 3), used by BRADLEY SR.; and the initial interception of wire and electronic communications over phone number (773) 948-2322 (TARGET TELEPHONE 4), used by DANIELS. Interceptions pursuant to this Order began on September 30, 2022, and ended on October 29, 2022. However, interceptions over TARGET TELEPHONE 3 ended on October 20, 2022, due to inactivity.

25.     On November 3, 2022, the Honorable J.P. Stadtmueller issued an Order authorizing the continued interception of wire and electronic communications over TARGET TELEPHONE 2, used by DANIELS; the continued interception of wire communications over phone number (773) 948-2322 (TARGET TELEPHONE 4), used by DANIELS; and the initial interception of wire and electronic communications over phone number (708) 635-3573 (TARGET TELEPHONE 5), used by BRADLEY SR. Interceptions pursuant to this Order began on November 4, 2022, and are scheduled to end at 11:59 p.m. on December 2, 2022.

**BARRAZA Sends Methamphetamine and Cocaine to Milwaukee
and St. Paul to facilitate the DANIELS' DTO**

26.     On January 5, 2022, the residence located at 8708 N. Deerwood Drive, Brown Deer, Wisconsin, which was later determined to be associated with DANIELS, was searched pursuant to a federal search warrant.  MASSEY was located at the residence during the execution of the warrant. Evidence seized during the search of the residence included, but was not limited to, approximately 1,910 grams of methamphetamine in the kitchen/dining area, comprised of 1,885 grams, which was divided into 4 individual plastic bags, in one of several white plastic screw-on top containers, and approximately 25 grams packaged in 64 individual gem pack bags. Next to the white plastic containers was a shipping box with a circular imprint similar to the top of one of the white plastic containers. The shipping label on the box was dated on December 22, 2021, and was addressed to Joelle MASSEY with the address for the residence at 8708 N. Deerwood Drive, Brown Deer, Wisconsin. The UPS shipping label indicated it was shipped by Michael Herrera with the listed address of 1421 W. Pico Boulevard, Los Angeles, California. That information is associated with the listed UPS account for DXG Technologies.

27.     After the search warrant at MASSEY's residence was executed, case agents began investigating the listed sender of the seized parcel containing methamphetamine. Further investigation revealed that the UPS account affiliated with DXG Technologies lists that account under the user/sender of Michael Herrera, telephone number of (818) 333-4746, and the address of 1421 W. Pico Boulevard, Los Angeles, California. Account records reflect that the address associated with DXG Technologies is 1001 S. Lawson

11

Street, City of Industry, California. A subpoena was sent to the leasing company associated to the listed DXG address (Lawson Street address), and return information revealed that DXG Technologies had no affiliation with that location since 2013. Further investigation revealed that the Lawson Street address was currently occupied by an unaffiliated business.

28.     Using open-source databases, case agents were unable to locate a "Michael Herrera" affiliated with DXG Technologies. Case agents were also unable to locate any information regarding the listed telephone number of (818) 333-4746, or any information linking a "Michael Herrera" to the Pico Boulevard address. Open-source databases revealed DXG technologies (USA) was a camera company in California and operated until 2013. That business is currently listed as terminated. Additionally, their website is entirely in Indonesian.

29.     Investigators later became aware of another UPS parcel that was sent to 8708 N. Deerwood Drive, Brown Deer, Wisconsin. The parcel was shipped on January 4, 2022, from the UPS store located at 912 E 12th Street Room B, Los Angeles, CA. The parcel listed a weight of 7.90 pounds and had the sender name of "Michael Herrera." The parcel was sent under the business account for DXG Technologies at the address of 1001 S. Lawson Street, City of Industry, California. UPS records indicated the parcel was subsequently delivered on January 10, 2022, and that the parcel was left at the front door of the Deerwood Drive address.

30.      Investigators obtained video surveillance from that UPS store location, which depicted a Hispanic male dropping off the above-referenced parcel on January 3,

12

2022. A still image of the parcel sender was obtained from the video. Case agents used facial recognition software that accessed open-source databases and subsequently located an Instagram profile picture from Instagram account "dsavagelifestyle." The photo depicted seven Hispanic males standing together, posing for the camera. The picture included the Instagram account of "savagezag." The Instagram profile picture of "savagezag" is consistent with the still image that depicted the sender of the UPS parcel that was dropped off on January 3 and shipped on January 4. Investigators issued a subpoena to Instagram for the subscriber information affiliated to the account "savagezag." Subscriber information from Instagram listed an email address of julio-barraza@hotmail.com. A check of law enforcement records revealed Julio C. BARRAZA (H/M XX/XX/74) as the user of that email account. Furthermore, investigators obtained a California Department of Transportation photo of BARRAZA and confirmed that BARRAZA was the sender of the UPS parcel, depicted in the January 3, 2022, surveillance video.

31.     On or about March 3, 2022, case agents intercepted a 13-pound package sent to FRYER's address in St. Paul, Minnesota. Specifically, the package was addressed to "K-Maree #E 234 Bates Ave Saint Paul, MN 55106-5543." The package was shipped from "DXG Technologies 1001 S Lawson St City of Industry, CA 91748." The parcel was shipped from the UPS store located at 912 E 12th Street Room B, Los Angeles, California. On March 4, 2022, case agents searched this package pursuant to a federal search warrant.  Located within the package was a white plastic dog food container with a screw off lid. The lid of the dog food container was glued shut, and expandable foam

13

was on the exterior of the dog food container. Located inside the dog food container was packing peanuts, glue, expandable foam, and two plastic bags. The first plastic bag contained one large rectangular object and the second plastic bag contained 2 large rectangular objects, which I know, based upon my training and experience, are consistent with the manner in which a kilogram of narcotics is packaged. The objects were tested for fingerprints with a negative result. A small sample of each suspected kilogram was subjected to the NARK II pouch 07 field test kit, and the result of the test was positive for cocaine. The total amount of cocaine seized was approximately 3,425 grams (1,135 grams, 1,145 grams, and 1,145 grams).

32.     Case agents were able to retrieve video surveillance from the originating UPS store located at 912 E. 12th Street Room B, Los Angeles, California, the location where the narcotics-laden parcel was sent from. Video surveillance depicted the parcel sender, who was primarily faced away from the camera angle. Although the camera angle primarily depicted the back of the parcel sender, case agents noted that the hair color, hair style, hair line, top profile and stature matched known images and video related to BARRAZA. The video along with the totality of evidence confirmed that BARRAZA was indeed the sender of the narcotics-laden UPS parcel sent to 234 Bates Avenue.

33.     Furthermore, an examination of financial information revealed that on February 23, 2022, Leroy HENTON made a cash deposit of $31,000 into a Wells Fargo account ending in x0363 affiliated with COLULA, the suspected California-based supplier coconspirator of BARRAZA. Additionally, FRYER made a cash deposit of

$76,000 into COLULA's same account on the same day but from a different state as Leroy HENTON. Based on my training and experience, I know that there is normally a delivery cost associated with the shipment of cocaine, and that a kilogram of cocaine would be approximately $25,000-$30,000. I further believe that the deposit amounts correspond to the approximately 3 kilograms of cocaine seized on March 3, 2022.

34.     During the course of the investigation, case agents obtained a subpoena, sent to Verizon Wireless, for subscriber information associated with the phone number (213) 725-3753, or the **Target Cell Phone**.  Information obtained from Verizon Wireless revealed that the subscriber information for the **Target Cell Phone** list to the business account for House of Bail Bonds, Inc. at 116 Astronaut E. S Onizuka Street, Los Angeles, California. The account manager on the account lists to "Alex Romo." Julio BARRAZA is listed as the contact for the individual number of the **Target Cell Phone**. It should be noted that there were nine listed telephones under the Verizon account, however, BARRAZA is identified as the user of that specific number (i.e., listed number ending in 3753). Furthermore, financial records through Continental Exchange Solutions, Inc, (CES) DBA Ria Financial Services indicated that on July 10, 2021, BARRAZA wired $1,000 from California to a location in Mexico. Listed on the transaction account was the name "Julio BARRASA" with a listed date-of-birth of XX/XX/1974, and a sender telephone number of the **Target Cell Phone**. Records further indicated that BARRAZA used a Driver's license to conduct the transaction. The address listed on the financial transaction was 707 Esperanza Street, California. It should be noted that BARRAZA's

California Driver's license lists an address of 707 Esperanza Street, Los Angeles, California.

35.     According to court-authorized pen register and trap and trace data, BARRAZA's phone account, the **Target Cell Phone**, has consistent wire communications with telephone number (213) 844-1788, used by COLULA. Furthermore, from February 28, 2022, through March 5, 2022, (the time period when the narcotics-laden parcel was sent to the Bates address and seized) DANIELS, using TARGET TELEPHONE 2, had 4 wire communications with COLULA, using (213) 844-1788. Between that same time period, BARRAZA, using the **Target Cell Phone**, had 39 wire communications with COLULA, using (213) 844-1788. From February 1, 2022, through November 4, 2022, BARRAZA had approximately 202 wire communications/calls with the telephone number (213) 844-1788, used by COLULA.

36.     Further investigation reflects that BARRAZA is believed to have sent numerous parcels containing suspected controlled substances, to include cocaine and methamphetamine, to the DANIELS DTO. When sending these parcels, BARRAZA used the moniker/alias "Michael Herrera."

37.     Through the examination of subpoenaed UPS records, case agents identified at least 19 parcels (including the one sent to and subsequently seized from the Bates address), between October 7, 2021, and September 9, 2022, that were sent to identified DTO locations from the account affiliated with Michael Herrera/DXG

16

Technologies.[1] These parcels are identified below. All parcels were sent from the UPS Store located at 912 E. 12th Street Room B, Los Angeles, California, unless otherwise noted.

| Date of Delivery | Sender Account | Recipient | Recipient Address | Weight |
|---|---|---|---|---|
| 10/7/2021 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Joelle MASSEY | 8708 N. Deerwood #374 Dr., Milwaukee, WI | Unknown |
| 10/18/2021 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Joelle MASSEY | 8708 N. Deerwood Dr. Milwaukee, WI | Unknown |
| 10/25/2021 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Joelle MASSEY | 8708 N. Deerwood Dr. Milwaukee, WI | Unknown |
| 11/8/2021 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Joelle MASSEY | 8708 N. Deerwood Dr. Milwaukee, WI | Unknown |
| 11/18/2021 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Joelle MASSEY | 8708 N. Deerwood Dr. Milwaukee, WI | Unknown |
| 12/07/2021 | Michael Herrera 1421 W Pico Blvd. Los Angeles, CA (sent from UPS Store located 1360 S. Figueroa St. Los Angeles, CA) | Currently unknown | 8708 N. Deerwood Dr. Milwaukee, WI | Unknown |
| 12/28/2021 | Michael Herrera 1421 W Pico Blvd. Los Angeles, CA (sent from UPS Store located 1360 S. Figueroa St. Los Angeles, CA) | Joelle MASSEY | 8708 N. Deerwood Dr. Milwaukee, WI | Unknown |

[1] Based on training and experience, affiant knows that UPS allows account holders to choose what is reflected as the sender information on each shipping label. The shipping label can reflect the account holder's name (i.e. Michael Herrera) or the business name affiliated with the account (i.e. DXG Technologies). Additionally, the shipping label can reflect the address(es) linked to the account holder, the business affiliated with the account holder, or the address of the UPS Store from which the parcel was mailed.

| | | | | |
|---|---|---|---|---|
| 1/10/2022 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Joelle MASSEY | 8708 N. Deerwood Dr. Milwaukee, WI | 7.9 pounds |
| 1/25/2022 (attempted delivery and subsequent pickup at UPS) | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | K. Marie Bently | 234 Bates Ave #E St. Paul, MN | 7.3 pounds |
| 1/27/2022 (attempted delivery on 1/26 and subsequent pickup at UPS by Christopher DANIELS) | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Christopher DANIELS | 5234 N. Teutonia Ave. 2 Milwaukee, WI | 9.2 pounds |
| 2/4/2022 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Diane Ellis | 9905 W. Fond Du Lac Ave. Milwaukee, WI | 9.4 pounds |
| 2/9/2022 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Michelle HAUCK | 9905 W. Fond Du Lac Ave. Milwaukee, WI | 6.8 pounds |
| 2/9/22 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | K. Marie Bently | 234 E. Bates Ave. St. Paul, MN | 9.5 pounds |
| 2/15/22 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | K. Marie | 234 E. Bates Ave. St. Paul, MN | Unknown |
| 2/16/2022 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Michelle HAUCK | 9905 W. Fond Du Lac Ave. Milwaukee, WI | Unknown |
| 3/7/2022 | DXG Technologies 912 E 12th St. Suite B Los Angeles, CA | Diane Ellis | 9905 W. Fond Du Lac Ave. #1 Milwaukee, WI | Unknown |
| 8/24/2022 | Michael Herrera 1421 W Pico Blvd. Los Angeles, CA | Ramona FRYER | 1046 Jessie St. Saint Paul, MN | 7.5 pounds |
| 9/9/2022[2] | Michael Herrera 1421 W Pico Blvd. | Andre Garner (appears as | 10018 W. Fond Du Lac Ave. Milwaukee, WI | 7.7 pounds |

---

[2] The video footage obtained from the August 24 and September 9 parcels depict the sender wearing a baseball-style hat and a medical mask. Upon examining the video

18

| | Los Angeles, CA | "andre gamer" but through investigation recipient has been identified as Andre Garner) | | |
|---|---|---|---|---|

## CONCLUSION

38.     BARRAZA operates the **Target Cell Phone**. The location data associated with the **Target Cell Phone** will assist case agents in conducting targeted physical surveillance and further identify the locations and individuals associated with and the nature, scope, and structure of the DANIELS' DTO.

39.     Case agents searched law enforcement databases to confirm that the **Target Cell Phone** is currently being serviced by Verizon.

40.     Case agents are requesting this warrant authorizing the initial collection of data related to the **Target Cell Phone** for **30** days to further investigate BARRAZA's activities, and to identify locations to which BARRAZA is traveling to further his drug distribution network and money laundering activities.

41.     Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or

---

footage, case agents have currently been unable to determine the identity of the sender of these parcels.

distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that BARRAZA is engaged in the trafficking and distribution of controlled substances and is using the **Target Cell Phone** while engaged in these crimes. I further submit that probable cause exists to believe that obtaining the location information of the **Target Cell Phone** will assist case agents in determining BARRAZA's DTO activities, DTO meeting locations, co-conspirators, and sources of supply.

42.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

43.     Based on my training and experience, I know that Verizon can also collect timing advance or engineering data commonly referred to as per call measurement data

(PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

## Cell-Site Data

44.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

45.     Based on my training and experience, I know that Verizon also can collect per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## E-911 Phase II / GPS Location Data

21

46.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## Subscriber Information

47.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for

22

wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

48. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

49. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

50. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably

23

compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

51. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **30 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

52. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night

## ATTACHMENT A

## Matter No. 2022R00013

**Property to Be Searched**

1. Records and information associated with the cellular device assigned call number **(213) 725-3753** (referred to herein and in Attachment B as "**Target Cell Phone**"), with listed subscriber unknown, that is in the custody or control of Verizon Wireless, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2. The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

## I.      Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.    The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period September 1, 2021, to the present:

        i.    Names (including subscriber names, user names, and screen names);

        ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.    Local and long distance telephone connection records;

        iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.    Length of service (including start date) and types of service utilized;

        vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

Identity Identifiers ("IMSI"), or International Mobile Equipment
Identities ("IMEI");

vii.    Other subscriber numbers or identities (including the registration
Internet Protocol ("IP") address); and

viii.    Means and source of payment for such service (including any credit
card or bank account number) and billing records; and

ix.    All records and other information (not including the contents of
communications) relating to wire and electronic communications
sent or received by the Target Cell Phone for the time period
September 1, 2021, to the present including:

a.    the date and time of the communication, the method of the
communication, and the source and destination of the
communication (such as the source and destination telephone
numbers (call detail records), email addresses, and IP
addresses); and

b.    information regarding the cell tower and antenna face (also
known as "sectors" through which the communications were
sent and received), as well as timing advance or engineering
data commonly referred to as per call measurement data
(PCMD, RTT, True Call, Advance Timing, Network Event
Location Operating System Information (NELOS), WebMap, or
equivalent).

b.    Information associated with each communication to and from the Target
Cell Phone for a period of **30** days from the date of this warrant, including:

i.    Any unique identifiers associated with the cellular device,
including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.    Source and destination telephone numbers;

iii.    Date, time, and duration of communication; and

iv.    All data about the cell towers (i.e. antenna towers covering specific
geographic areas) and sectors (i.e. faces of the towers) to which the
Target Cell Phone will connect at the beginning and end of each
communication, as well as timing advance or engineering data
commonly referred to as per call measurement data (PCMD, RTT,

2

True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

c.  Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night.  "Information about the location of the Subject Phone" includes all available E-911 Phase II data, RTT data, GPS data, latitude-longitude data, and other precise location information.

   i.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

   ii.  This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, involving Julio BARRAZA.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this certification is true and correct. I am employed by Verizon, and my

title is _____. I am qualified to authenticate the records

attached hereto because I am familiar with how the records were created, managed,

stored, and retrieved. I state that the records attached hereto are true duplicates of the

original records in the custody of Verizon. The attached records consist of

_____.

I further state that:

a.      All records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly

conducted business activity of Verizon and they were made by Verizon as a regular

practice; and

b.      Such records were generated by Verizon's electronic process or system

that produces an accurate result, to wit:

1.      The records were copied from electronic device(s), storage

medium(s), or file(s) in the custody of Verizon in a manner to ensure that they are true

duplicates of the original records; and

2

2.     The process or system is regularly verified by Verizon and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                                Signature

3